# *PELUSO & TOUGER, LLP*
*70 LAFAYETTE STREET*
*NEW YORK, NEW YORK 10013*
*PelusoandTouger.com*

Ph. No. (212) 608-1234
Fax No. (212) 513-1989

BY ECF:
January 25, 2022

Honorable Sidney H. Stein
United States District Court Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: United States v. Dwight Boyd,
    21 CR 486 (SHS)

Your Honor,

As the Court is aware Mr. Boyd has been released from jail on home detention and a $250,000.00 Bond co-signed by three individuals and is residing with his mother at 901 Anderson Ave, Apt. 3C, Bronx, New York 10452. He has also obtained employment at Manhattan Beer Distributors located at 955 E149th Street, Bronx, New York as a warehouse employee.  This is a union job with good pay and benefits.  He is fully compliant with all the rules and regulations of home detention and has had no problems with his Pre-Trial Officer. Furthermore, Mr. Boyd is also presently enrolled in a GED course which is nearing completion. Obviously, it is very important to Mr. Boyd to complete his GED program and maintain his employment.  To put it succinctly Mr. Boyd has not wasted the time since his arrest and to the contrary has used it to improve himself both vocationally and mentally and sought and gained employment.

Mr. Boyd has also taken full responsibility for his actions and is deeply regretful that he let himself get convinced into becoming involved in the charged conduct.  He has accepted the Plea Agreement (Agreement) offered by the Government and has plead guilty before this Court to a B(1)(c) narcotics conspiracy which has no mandatory minimum sentence. As the Court knows from his plea proceeding Mr. Boyd was on the bottom of the charged conspiracy and was merely a street dealer.  There is no mandatory minimum associated with this crime yet Mr. Boyd is still subject to the Bail Reform Act, 18 U.S.C. § 3143(a)(1), which states a "judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence ... be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any

<mark>other person or the community</mark> if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c)." Herein, it is the defendant's position that Mr. Boyd meets the standard outlined in 18 U.S.C. § 3143(a)(1), in that he is neither a flight risk nor a danger to the community.

When Mr. Boyd first sought bail upon his arrest on these charges the government agreed that Mr. Boyd could be released from custody under certain bail conditions thus, acknowledging that Mr. Boyd was not a flight risk even though at that time Mr. Boyd was facing much more serious charges including a narcotics conspiracy carrying a ten year mandatory minimum sentence. Nothing has changed since then except for the fact that the charges against Mr. Boyd have been greatly reduced as well as his sentence exposure. Gone is the 10 year mandatory minimum narcotics conspiracy, as he has pled guilty to a (b)(1)(c) with no mandatory minimum sentence. Thus, Mr. Boyd went from facing at a minimum of 10 years to facing the possibility of receiving no prison time at all. Thus, it would be non-sensical for Mr. Boyd to flee the jurisdiction after he has plead guilty and facing the possibility of receiving no jail time but not before his plea when he was facing the possibility of decades in jail. Mr. Boyd has accepted responsibility for his actions. Mr. Boyd is doing everything he can to prove to this Court that he has learned his lesson and will never be returning to criminal conduct again. Fleeing the jurisdiction would obviously be counterproductive and stand in direct contrast to all his other actions since his arrest. Mr. Boyd has not spent his time on home confinement lamenting his situation, getting angry and watching Netflix. To the contrary, he has been proactive in trying to improve himself in every way. He is taking vocational courses and secured employment.

He also has no place to run to. He lives with his mother and he has no family or close friends outside the area. Mr. Boyd has no life savings and thus no funds to run with. The people closest to him have cosigned the Bond and thus they have no incentive to fund Mr. Boyd's escape and life on the run nor do they have the savings to do so. Mr. Boyd also knows if he fled the jurisdiction, he would be ruining the lives of the people closest to him especially those who co-signed his bond.

Finally, Mr. Boyd has demonstrated no signs that he disrespects this Court or its instructions. He has meticulously followed every instruction and rule of this Court since his release and has no intentions of violating them in the future. His history with this Court proves he can be trusted to return to this Court for sentencing. Mr. Boyd is working very hard to prove to this Court that he should receive a sentence that takes into account is whole life history and he knows full well that attempting to abscond from this Court's jurisdiction will not only saddle him with further charges that entail serious jail consequences but will also mean that all the work he has done since his release will be for naught and he will receive substantially more prison time if he flees than if he would appear as required.

Honorable Sidney H. Stein
January 25, 2022
Page 3 of 5

By agreeing to release Mr. Boyd on bail the Government also agreed at that time that he was not a danger to the community under his bail conditions. The Government has also agreed to every modification of his bail conditions since his release including reducing his bail condition from home incarceration to home detention. Thus, how can they argue now that he has suddenly become a danger to the community because he has accepted responsibility for one of the crimes he was charged with. If the Court maintains his current bail conditions Mr. Boyd will continue to be confined to his home where he lives with his mother and only be allowed out to continue his vocational courses and for employment. Both activities which have been going on without any allegations of misconduct against Mr. Boyd.

In *United States v. DiMattina*, 885 F. Supp. 2d 572 (E.D.N.Y. 2012), the Court stated, that the Court of Appeals for this circuit has emphasized that the "test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional'." *Lea*, 360 F.3d at 403; *United States v. Sabhnani*, 529 F. Supp. 2d 377 (E.D.N.Y. 2007) see also *U.S. v. DiSomma*, 951 F.2d 494, 498 (2nd Cir 1991). In *Sabhnani*, the Court stated there is a wide range of factors for the Court to consider among them being: (1) the nature of the defendant's criminal conduct; (2) the defendant's prior record; (3) the length of the future prison sentence; (4) circumstances that may render the hardships of prison unusually harsh, such as illness or injury; (5) the likelihood of success on a pending appeal; and (6) whether the defendant was unusually cooperative with the government. See *United States v. Garcia*, 340 F.3d 1013, 1018-22 (9th Cir.2003). Here each one of the factors dictate most respectfully that the Court should not change the conditions of release of Mr. Boyd once he has plead guilty herein.

As to factor number 1, the fact that the crime to which Mr. Boyd has plead guilty to is a crime is not within itself sufficient for this Court to remand Mr. Boyd as proven by 18 U.S.C. § 3143(a)(1) because if the legislature wanted every person who pleads guilty to a crime to be remanded the statute would not have allowed this Court or any other Court the discretion by statute to continuing their bail conditions under certain circumstances. Thus, for this Court to grant the government's request to remand Mr. Boyd just because he has decided to accept responsibility for his actions without any further proof would be against the wording of the statute. Yes, it is the burden of the defendant to prove he is not a flight risk or a danger to the community but the mere fact that he has decided to plead guilty cannot and under these circumstances certainly does not mean he is a flight risk and/or a danger to the community. Thus, when considering the first factor - the nature of the defendant's criminal conduct, the Court must consider the defendant's actions separate and distinct from the crime itself. Here, the facts prove only that Mr. Boyd was a low level street peddler of narcotics. He was not in any type of supervisory position nor did he have anyone working for him. Nor was he involved in any acts of violence.

As to factor 2, yes, it is true that Mr. Boyd is a career offender and his Guidelines for this crime are accordingly quite high. However, this information is not new to the Court or the

Honorable Sidney H. Stein
January 25, 2022
Page 4 of 5

Government. The Government had full knowledge of Mr. Boyd's arrest record when it agreed to allow Mr. Boyd out on home incarceration and again when they agreed to lower his release to home detention. Thus, this fact should be discounted by the Court. Furthermore, as previously stated, why would Mr. Boyd abscond from the jurisdiction now after his charges were reduced and not before when he was facing a mandatory minimum sentence of 10 years. It would be totally illogical and nonsensical for him to run now.

As to factor 3, there is no mandatory minimum in this matter. This Court if it so decides could issue a non-jail sentence or any amount of time it feels is justified. In comparison to most crimes that fall under the parameters of 18 U.S.C. § 3143(a)(1) Mr. Boyd's situation is much better.

As to factor 4, while the Covid numbers in the MDC are lower than during the height of the pandemic, cases are continuing to rise in the MDC and have not leveled off as they have in the general public. There is certainly more of a risk that Mr. Boyd will become infected by Covid in jail than under his present conditions. Furthermore, if Mr. Boyd were to become infected with Covid 19 the level of care he would receive at the MDC is abysmal and the risk of serious ramifications is greatly increased.

Factor 5 is not relevant herein.

As to factor 6, Mr. Boyd has been completely cooperative with his Pre-Trial Services officer and fully compliant with the rules and orders of this Court.

Thus, when all the factors outlined by the Courts of this District are analyzed they all demonstrate that Mr. Boyd's bail conditions should be maintained.

In *United States v. Reboux*, No. 5:06-CR-451 (FJS), 2007 WL 4409801 (N.D.N.Y. Dec. 14, 2007) the defendant exhibited exemplary behavior during the criminal proceedings. The same can be said of Mr. Boyd. As stated, since his release he has fulfilled all of his bail requirements, sought and receives vocational training and sought and gained employment. The Court ruled in *Reboux*, that detention pending sentencing would prematurely extinguish these mutual benefits. Here the situation is the same. Mr. Boyd is working and is working to improve himself by getting a GED. As the Court noted at his plea proceeding getting a GED is not only quite beneficial to Mr. Boyd but is also beneficial to society because it means that Mr. Boyd will have a better chance for employment in the future. Furthermore, in *Reboux* the defendant was charged with a violent crime which of course Mr. Boyd is not. There are no acts of violence even charged in this case.

In *United States v. Lopez*, No. 19CR116KMWJLC, 2020 WL 1678806 (S.D.N.Y. Apr. 6, 2020): the court concluded that there was no clear and convincing evidence that Lopez was either likely to flee or posed a danger to the safety of others in the community. The Court stated that there

Honorable Sidney H. Stein
January 25, 2022
Page 5 of 5

was no evidence to suggest that Lopez was likely to flee, apart from the potential for a substantial sentence resulting from his conviction (same as herein). The Court continued indeed, it would be difficult in these times for Lopez to avail himself of transportation away from New York City, where in any event he is a lifelong resident with strong family ties. *United States v. Fellela*, No. 3:19-CR-79 (JAM), 2020 WL 1457877, at *1 (D. Conn. Mar. 20, 2020). Finally, the Court stated, separately, the Government has proffered no evidence to suggest that Lopez's conviction involved violent conduct. (same as here). Thus, the Court found that Lopez's release would not pose a danger to the community. Mr. Boyd's situation is similar.

Mr. Boyd meets the requirements that is set forth in the "escape hatch" found in Section 3145(c), which authorizes bail where a defendant (1) "meets the conditions of release set forth in section 3143(a)(1)," meaning he establishes by clear and convincing evidence that he is not a flight risk or a danger to the community, and (2) "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Mr. Boyd has not only been completely compliant with his home confinement but, he is going to school and has a job. He is being productive in his community and is trying hard to better himself. Given his history of hard work, if he is permitted to remain free on bail, his conduct illustrates that he is likely to contribute to society significantly. Furthermore, there is a substantial and well documented risk to his health if he is incarcerated during this period where new Covid cases are on the rise. Thus, defendant has met his burden of establishing by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if his release on bail is continued under the present conditions.

It is respectfully requested that the Court allow Mr. Boyd's continued release on bail under his present conditions. Thank you very much for your consideration of this matter

Respectfully yours,

David Touger