

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 27, 2022

**BY ECF**
The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:    **United States v. Dwight Boyd**, 21 Cr. 486 (SHS)

Dear Judge Stein:

    The Government writes in opposition to defendant Dwight Boyd's submission requesting release on bail pending sentencing. For the reasons set forth below, Boyd's immediate remand is mandatory under 18 U.S.C. § 3143(a)(3) and there are no "exceptional" circumstances that justify his release under § 3145(c).

**Relevant Background**

    As the Court is aware, the defendant was charged in the Indictment with participating in a conspiracy to distribute 280 grams and more of crack cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One), and another conspiracy to distribute quantities of crack cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count Two). The defendant was charged in Count Two because, based on the Government's investigation, there came a time when he left the broader conspiracy charged in Count One and began selling crack without his codefendants.

    Earlier this week, on January 24, 2022, the defendant pleaded guilty pursuant to a plea agreement to the Count Two conspiracy. As the plea agreement reflects, the parties agree that the defendant is a Career Offender under § 4B1.1(a) of the Sentencing Guidelines (by virtue of multiple prior narcotics trafficking offenses), that he is in Criminal History Category VI, and that his advisory Guidelines Range is 151 to 188 months' imprisonment.

**Applicable Law**

    Under the Bail Reform Act, the bail analysis that applies to a defendant changes upon the defendant's conviction from a guilty plea or trial. <u>See</u> 18 U.S.C. § 3142. For most offenses, the burden shifts to the defendant to prove, by clear and convincing evidence, that he is neither a flight risk nor a danger to the community. 18 U.S.C. § 3143(a)(1).

However, the offense to which the defendant pleaded guilty—a narcotics conspiracy under 21 U.S.C. §§ 846 and 841(b)(1)(C), which carries a twenty year maximum sentence—falls under 18 U.S.C. § 3143(a)(2) (cross-referencing 18 U.S.C. § 3142(f)(1)(A)–(C)) because it is a Controlled Substances Act offense for which the statutory maximum is ten years or more. See 18 U.S.C. § 3142(f)(1)(C). For this offense, the typical post-conviction bail inquiry does not apply. Instead, detention is mandatory unless the Court finds that there is a substantial likelihood of an acquittal or a new trial, or the Government recommends a non-incarceratory sentence. 18 U.S.C. § 3143(a)(2). Neither condition is satisfied here.

In the section of the Bail Reform Act pertaining to appeals or reviews of detention orders, 18 U.S.C. § 3145, the following language appears:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c). Even assuming, arguendo, that § 3145(c) could be interpreted as offering a statutory backdoor to defendants hoping to evade the effect of § 3143(a)(2),[1] the defendant must prove not only that he would satisfy the standard in § 3142(a)(1)—i.e. that he is, by clear and convincing evidence, neither a flight risk nor a danger to the community—but also that there are *exceptional* circumstances justifying his release.

Considerations that are "purely personal" are not "exceptional" within the meaning of the statute. United States v. Lippold, 175 F. Supp. 2d 537, 540 (S.D.N.Y. 2001) (citation and quotations omitted). For example, a defendant's "personal family situation" is not ordinarily exceptional because "personal family hardships are very common and occur in a great number of cases." Id. (citation omitted). Similarly, "[t]here is nothing 'exceptional' about going to school, being employed, or being a first-time offender, either separately or in combination." United States v. Lea, 360 F.3d 401, 403–04 (2d Cir. 2004) (reversing district court grant of bail on such grounds); United States v. Colon, 821 F. App'x 39, 42 (2d Cir. 2020) (summarily vacating district court order bailing mandatory remand defendant based merely on finding that the defendant "supports his

---

[1] Read in the context of the statute, the language allowing for release "exceptional reasons why such person's detention would not be appropriate" applies *only* in the context in which a detention or bail order is appealed on some other ground. See 18 U.S.C. § 3145 (providing for procedures to appeal or review detention orders); United States v. Chen, 257 F. Supp. 2d 656, 660 (S.D.N.Y. 2003) (concluding "Section 3145(c) therefore governs appellate review of either: (i) a district court's initial release or detention order made pursuant to section 3143, or (ii) a district court's order, made pursuant to section 3145(a) or (b), reviewing another court's release or detention order"). In other words, § 3145(c) is not a substantive modification of the standard set forth in § 3143(a)(2).

family, is employed, and was in compliance with his conditions of supervision"). Courts have made clear that "exceptional" in this context means "rare" or "out of the ordinary"; a circumstance that could be claimed by many defendants is definitionally unexceptional. United States v. DiSomma, 769 F. Supp. 575, 576 (S.D.N.Y.), aff'd, 951 F.2d 494 (2d Cir. 1991).

While at the outset of the COVID-19 pandemic, courts concluded that the risk of COVID-19 to defendants with certain health conditions could satisfy § 3145(c), see, e.g., United States v. McDuffie, 451 F. Supp. 3d 281, 286 (S.D.N.Y. 2020), the widespread availability of COVID-19 vaccines and boosters has since led courts to conclude that the risk of COVID-19 alone is not exceptional. United States v. Green, 2021 WL 2452119, at *9 (S.D.N.Y. June 16, 2021) (concluding defendant "has not shown that his medical condition and the COVID-19 pandemic constitute an exceptional reason" because vaccines were widely available at facility); cf. United States v. Wright, 2022 WL 134870, at *6 (S.D.N.Y. Jan. 13, 2022) (in sentence reduction context, concluding that COVID-19 risk was not extraordinary and compelling because defendant "has long had the opportunity to receive a COVID-19 vaccine, which would have dramatically reduced the risk the virus presented to him").

**Discussion**

The defendant's submission appears to ignore the relevant statutory standard and presents the question as an ordinary bail determination, in which the burden is on the Government to prove risk of flight and danger to the community. He argues that the Government's prior acquiescence to home detention and the fact that he has been compliant with pretrial release furnish a sufficient basis to authorize "exceptional" release under § 3145(c).

The defendant is wrong. The relevant statutory provision is § 3143(a)(2), not § 3143(a)(1). The risk-of-flight and danger analysis thus does not become relevant unless there is an "exceptional" basis for release under § 3145(c), and there is none here. As the Second Circuit held in Lea and Colon, the defendant's family circumstances, employment, and desire to obtain or continue education, do not singly or in combination merit release under § 3145(c). Nor is there anything exceptional about being compliant with pretrial conditions: compliance is what the law requires. A defendant does not become "exceptional" by doing what he must. The defendant's premise—that good behavior and compliance with pretrial conditions makes him "exemplary"—would render 18 U.S.C. § 3143(a)(2) dead letter. See Colon, 821 F. App'x at 42 (summarily vacating § 3145(c) release predicated on "compliance with his conditions of supervision" and employment and remarking that such facts are "plainly not adequate" to justify release).

There is good reason the substantive standard in § 3143 is less favorable to defendants than the standard in § 3142 (which applied at earlier stages of this case): the defendant has pleaded guilty, is no longer entitled to the presumption of innocence, and faces certain sentencing. There is also a reason that § 3143(a)(2) removes certain offenses—including the serious drug offense that the defendant has pleaded guilty to here—from the ordinary risk-of-flight and dangerousness analysis set forth in § 3143(a)(1). Congress has determined that, as to such offenses, the nature of the offense is sufficiently serious and the penalties sufficiently high that all convicted defendants must be remanded—unless the circumstances in § 3143(a)(2)(A), inapplicable here, are satisfied.

The defendant does not make a serious attempt to argue that COVID-19 is an exceptional circumstance as to him.  He does not claim to have any comorbidity that would put him at risk of severe symptoms, and he does not disclose his vaccination status.  If the defendant is fully vaccinated and boosted, his risk of severe symptoms is very low (although, the Government acknowledge, there is some risk of breakthrough infection).  See, e.g., Pfizer Says Its Booster Offers Strong Protection Against Omicron, December 8, 2021, available at https://www.nytimes.com/2021/12/08/health/pfizer-booster-omicron.html.  If the defendant is not fully vaccinated and boosted, the risk to his health from COVID is the result of his own choices and he should not be permitted to reap a benefit from his knowingly exposing himself and others to risk.  See Wright, 2022 WL 134870, at *6 (dismissing unvaccinated defendant's professed COVID fear as "contrived" and noting that defendant "cannot reasonably claim that his increased risk exposure to COVID-19 warrants a sentence reduction when he has declined to take the one action that—incarcerated or not—would materially reduce the risks to him from COVID-19").

Finally, even if the defendant could satisfy the threshold "exceptional" circumstances showing under 18 U.S.C. § 3145(c), he cannot carry his burden of showing, by clear and convincing evidence, that he is not a danger to the community or a flight risk.  The defendant—a Career Offender—is a serial drug trafficking recidivist.  That alone creates a danger to the community.  The United States Sentencing Commission has found that Career Offender crack traffickers are rearrested at a rate of 68.5%:



United States Sentencing Commission, Recidivism Among Federal Drug Trafficking Offenders (Feb. 21, 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170221_Recidivism-Drugs.pdf, at 44.

As part of the charged conduct, the defendant sold crack cocaine on a regular basis to the community he lived in, ruining the lives of the addicts to which he sold and further contributing to the downward spiral of drugs and violence that devastates so many communities.  Having stipulated to a Guidelines range of 151 to 188, and having now pleaded guilty and admitted his

Page 5

guilt, the defendant faces a very lengthy period of incarceration. In sum, even under a § 3143(a)(1) inquiry, remand would be appropriate.

**Conclusion**

   For the reasons set forth above, the Government respectfully requests that the defendant be remanded immediately, as required by 18 U.S.C. § 3143(a)(2).

           Respectfully submitted,

           DAMIAN WILLIAMS
           United States Attorney for the
           Southern District of New York

    by:  /s/ Jun Xiang
           Jun Xiang
           Assistant United States Attorney
           (212) 637-2289

**CC (By ECF)** All Counsel of Record